HOROWITZ ET, PLAINTIFFS-APPELLANTS, *v.* UNITED STATES FIRE INSURANCE CO., DEFENDANT-APPELLEE.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25838. Decided June 1, 1962.

*Messrs. Barnett & Kent,* for plaintiffs-appellants.
*Messrs. Arter, Hadden, Wykoff & Van Duzer,* for defendant-appellee.

(HUNSICKER, J., of the Ninth District, sitting in place of HURD, J.)

HUNSICKER, J. Mrs. Yolanda Horowitz and her son, Albin Horowitz, a minor, filed their petition against The United States Fire Insurance Company, seeking a declaration that the parties plaintiff were covered by a certain policy of liability insurance issued by The United States Fire Insurance Company, herein called company.

Albin Horowitz was involved in an accident on December 6, 1957, and due notice of such accident was given to the insur-

ance company. The company refused to defend a suit subsequently brought against the minor, and refused to pay any sum to Mrs. Horowitz under the collision clause of the policy. The company alleged that they cancelled this policy prior to the accident, and sent to Mrs. Horowitz due notice of that fact.

Under the terms of the policy the company could cancel the policy by sending a notice of that fact by ordinary mail to the address of the policy holder as set out on the policy of insurance. The company did send such notice to Mrs. Horowitz on November 18, 1957, notifying her that the company "hereby elects to and does cancel the said policy and any and all endorsements and/or renewal certificates relating thereto, the said cancellation to become effective as of 12:01 A. M. of the 29th day of November 1957, Standard Time."

The policy that was cancelled was issued originally to be effective from September 2, 1957, to September 2, 1958, and carried in addition to other coverages, a liability limit of $10,000 "each person" and $20,000 "each occurrence," or, as we know it, a 10-20 policy.

Thereafter, Mrs. Horowitz, on September 19, 1957, requested that the liability coverage be increased so that the limits of liability should be $25,000 "each person" and $50,000 "each occurrence," thus making the liability coverage 25-50. The agent accepted the additional premium, and on September 20, 1957, requested the company to "increase the limits of liability by endorsement" of the policy which expires September 2, 1958. The company replied that such policy limits would not be increased unless Mrs. Horowitz signed a statement known as "Restrictive Endorsement" that the policy "does not apply to any loss sustained while any vehicle covered hereunder is being operated or used by any male driver under twenty-five (25) years of age." Mrs. Horowitz did not sign this restrictive endorsement. The company then notified the agent that if such restrictive endorsement was not signed by November 15, 1957, they "will be forced to send notice of cancellation."

The restrictive endorsement was not thereafter signed by Mrs. Horowitz, and notice of cancellation under the terms of the policy was duly forwarded to Mrs. Horowitz.

There can be no question but that the policy issued effective September 2, 1957, to September 2, 1958, was cancelled. What,

then, was the effect of the request for additional liability coverage made by Mrs. Horowitz on September 19, 1957? Did this create a new contract of insurance beginning on that date, or was it a change in the already-existing policy? The contract of insurance into which the parties entered on September 2, 1957, contained a provision that terms of the policy shall not be "waived or changed, except by endorsement issued to form a part of this policy, signed by a duly authorized representative of the company."

It is the position of Mrs. Horowitz that since the policy of September 2, 1957, could not be changed except by written endorsement, the request for a 25-50 policy coverage created a new contract of insurance separate and distinct from that arising under the policy of September 2, 1957. We cannot accept this view of the matter herein. There was but one contract of insurance entered into with Mrs. Horowitz. The terms and conditions of insurance coverage were fully set out in that policy. She desired to, at the time the policy was delivered to her, increase the limits of liability, and consequently she paid for the additional coverage at the same time she received the policy. This fact was receipted on the invoice as of September 19, 1957.

This conduct of the parties was an alteration in the policy coverage consented to by the parties. This sort of oral modification or oral alteration, even in the light of the provision respecting change in the contract, is lawful and proper.

In 6 Couch Cyclopedia of Insurance Law, Sec. 1384, at p. 4972, et seq., the author citing many authorities, says:

"Since an insurance policy is but the written expression of the contract, the parties thereto may make such lawful alterations and modifications thereof as they may mutually agree upon. Such alterations or modifications may be made by indorsements on the policy, either marginal, or on its back, or by inserting words in the body of the instrument, or by a separate paper, or new policy embodying the change, or orally, and this by direct act of the company itself, or of its authorized agent, or by way of ratification by the principal of a change made by or with the consent of its agent. * * *"

We have examined all of the claims of error and find none

prejudicial to the substantial rights of the appellant. The judgment must be affirmed.

Judgment affirmed.

KOVACHY, P. J., SKEEL, J., concur.